UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 2:11-cr-7
    HON. ROBERT HOMES BELL

JAMES RICHARD VANDERWEELE,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Defendant James Richard Vanderweele was indicted for possession of unregistered silencers. Defendant moves to suppress the silencers seized from his home on September 22, 2010, and the statements that he made in response to police questioning on that day. A hearing was held on October 3, 2011. Testifying at the hearing were Escanaba Public Safety Sergeant Jeffery Erickson, Escanaba Public Safety Officer Gary Sovey, ATF Special Agent James Petschke, and the defendant. Defense counsel indicated that he wished to file a supplemental brief at the conclusion of the hearing. The court issued an order for supplemental briefing. The government did not file a response to defendant's supplemental brief.

On September 13, 2010, this court issued a search warrant for defendant's residence. On the day the search warrant was executed, UPSET detectives Erickson and Hanson established surveillance at defendant's residence. The officers needed to know defendant's location before attempting to execute the warrant because defendant was known to carry a handgun and silencer with him. The detectives observed a male driving a moped in an alley behind the Vanderweele residence.

The driver of the moped was believed to be James Vanderweele. The detectives followed the moped, approached and asked the driver if his name was Mike. The driver responded that his name was James. Detective Erickson then identified himself as a police officer and advised defendant that they had a search warrant for his home. Defendant stated that he was out to get cigarettes and only his wife and his dog, a large pit bull, were inside the home. A record check revealed that defendant had a restricted license and could not legally drive a moped without violating his restrictions.

Detective Erickson informed defendant that he was not under arrest, but that his presence was required at his home while the officers conducted the search warrant. Defendant was transported back to his home by Escanaba Public Safety officer Gary Sovey. Defendant was handcuffed and placed inside the vehicle. Officers knocked on the front door of the residence where Cheryl Vanderweele and the pit bull were just inside the door. Entry was made of the residence. A security sweep was conducted, but no other occupants were located. Cheryl Vanderweele was handcuffed and seated on a couch. Special Agent Petschke met with defendant at the rear of the residence. Defendant asked what this was all about. Defendant stated that he would answer questions if he knew what this was about. Special Agent Petschke advised defendant of his *Miranda* rights. Defendant indicated that he understood his rights. Special Agent Petschke informed defendant that the search of his residence was to recover his silencers. Defendant nodded his head. When asked where they were located, defendant responded that the silencers were in a bag underneath his bed in the bedroom. Defendant stated that he had four silencers, two for a .22 caliber firearm, one for a 9 mm firearm, and one possibly for a .45 caliber firearm. Defendant indicated that these came from his deceased brother who lived in Indiana. Defendant was the executor of his brother's estate. Defendant stated that he knew the silencers were most likely illegal in Michigan,

knew he should not have them, and knew he could not sell them. After locating the silencers in the house, Special Agent Petschke returned outside and again read defendant his *Miranda* rights. At this time, defendant asked to speak to an attorney. All questioning ended at this point.

Defendant argues that he was handcuffed with his hands behind his back and not in the front as maintained by the police officers. Defendant claims that he was transported in the back seat of the marked patrol car and his movements were restricted and controlled by the police. He believed that he was under arrest while he was being questioned by Special Agent Petschke. He claims that he told Special Agent Petschke that he had three silencers for a .22 caliber gun and one silencer for a 9 mm gun. Defendant does not recall stating that the silencers were most likely illegal.

Defendant argues that the government provided insufficient probable cause to support the request for a search warrant. The search warrant, according to defendant, did not provide a sufficient basis to support a finding of probable cause. Defendant claims that the information that the silencer was seen in defendant's possession four or five months earlier was stale information and no further information was provided to support the search. Further, defendant argues that there exists no nexus between the silencer seen at the "Clubhouse" and the search of defendant's residence.

Defendant also claims that the statements he made to Special Agent Petschke should be suppressed because no *Miranda* warning was given. The government asserts that a *Miranda* warning was given. Further, defendant argues that the statements he made were the product of coercion and involuntary.

A judicial officer determines probable cause based upon the totality of the circumstances. *United States v. Hill*, 142 F.3d 305 (6th Cir. 1998), citing *Illinois v. Gates*, 462 U.S.

213, 238 (1983). "Probable cause requires only a probability or substantial chance of criminal activity." *Id.* The Sixth Circuit in *United States v. Woosley*, 361 F.3d 924, 926-27 (6th Cir. 2004), set forth the standard used in evaluating whether probable cause existed to support the authorization of a search warrant:

> This court reviews the sufficiency of an affidavit to determine "whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir.1991) (quotation omitted). The affidavit should be reviewed in a commonsense - rather than a hypertechnical - manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny. *United States v. Greene*, 250 F.3d 471, 479 (6th Cir.2001). The magistrate's determination of probable cause is afforded great deference, and that determination should be reversed only if the magistrate arbitrarily exercised his discretion. *Id.*
>
> In *United States v. Allen*, 211 F.3d 970 (2000) (*en banc*), which is relied on by both Woosley and the Government, we held that where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate may believe that evidence of a crime will be found. *Id.* at 976 (emphasis omitted). In concluding that independent police corroboration of the information provided was unnecessary in such cases, we emphasized that probable cause determinations must be based on the totality of the circumstances and cautioned against a continuing reliance on formalistic "tests" that required the satisfaction of particular elements to support a finding of probable cause. *Id.* at 975-76. Consequently, an affidavit including a tip from an informant that has been proven to be reliable may support a finding of probable cause in the absence of any corroboration. *See Id.* at 976; *United States v. Smith*, 182 F.3d 473, 478-79 (6th Cir.1999). Alternatively, an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information. *See Illinois v. Gates*, 462 U.S. 213, 241-45, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir.2000) ("[I]nformation received from an informant whose

>   reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information.").

A probable cause review of an affidavit supporting a search warrant is limited to the information presented in the four corners of the affidavit. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

Defendant argues that the information in the affidavit, that he was observed with a silencer at a motorcycle clubhouse four or five months before the date of the affidavit, was stale and did not provide a nexus between the observation at the clubhouse and the search warrant for his residence. The government argues that due to the nature of a silencer, unlike drugs which are quickly sold, a five month old observation of the silencer was not stale.

>   The probable cause required for a search warrant "'is concerned with facts relating to a presently existing condition.'" *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998) (quoting *W. LaFave, Search and Seizure* 3.7 at 338 (3d ed.1996)). "Thus, the critical question is whether the information contained in the affidavit, when presented to the . . . judge, established that there was a fair probability that [evidence] would still be found at [the location of the search]." . In other words, a warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location.
>
>   The staleness inquiry is tailored to the specific circumstances in each case. *Id.* (citing *Sgro v. United States,* 287 U.S. 206, 21011, 53 S.Ct. 138, 77 L.Ed. 260 (1932)). "[T]he length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling. *Id.* It is possible that even if a substantial amount of time had elapsed between a defendant's last reported criminal activity" and the issuance of the warrant, the warrant had not become stale. *Id.*
>
>   This Court has outlined several factors to consider when analyzing staleness:

> (1) "the character of the crime (chance encounter in the night or regenerating conspiracy?)
>
> (2) the criminal (nomadic or entrenched?)
>
> (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?)"
>
> (4) the place to be searched (mere criminal forum of convenience or secure operational base?)." *Id.*

*United States v. Abboud,* 438 F.3d 554, 572-573 (6th Cir. 2006).

In *United States v. Fechette*, 583 F.3d 374 (6th Cir. 2010), the Sixth Circuit evaluated the staleness of a search warrant affidavit and whether there existed probable cause to search a computer at a residence. The magistrate judge was provided information that the suspect 16 months earlier had purchased a one month subscription to a child pornography website. The IP address was used by a person with an IP address and email account registered at the suspect's home address. The magistrate judge found probable cause existed for a search warrant at the residence. Applying the *Abboud* analysis the Sixth Circuit found that the information contained within the search warrant affidavit was not stale and that probable cause existed for the issuance of the warrant.

Specifically, the Sixth Circuit found that child pornography was not a fleeting crime but one carried out over an extended period of time, defendant was not nomadic and had lived in the same house over the sixteen month period, images of child pornography could be kept indefinitely, and the defendant resided in his home which was considered a "secure operational base." The court concluded that based upon these factors, the 16 month old evidence was not stale and could be considered by the magistrate judge in making his probable cause determination. The affidavit provided a substantial basis for the magistrate judge to find probable cause to support the warrant, because it provided that defendant paid for a one month subscription to the website using his PayPal

account that was connected to his residence. Defendant was also a registered sex offender and continued to reside at this address at the time of the search.

To establish a nexus between the facts that would justify the search warrant and the location of the search, the affidavit must show "a fair probability that the evidence of the crime will be located on the premises of the purposed search." *Id*. citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). The government argues that it was reasonable to assume that defendant had the silencer in his home and that he still had the silencer five months after the observation at the clubhouse. The defendant argues that the information was stale and not connected to defendant's residence.

The character of the crime involved possession of unregistered silencers. Although the size of the silencers makes them easily transferrable, it is likely that a suspect would keep the silencers for an extended period, even during the course of the suspect's lifetime. The criminal suspect was not nomadic. Defendant had resided in a permanent residence and although he had taken the silencers to his motorcycle clubhouse where they were seen by a witness, it was reasonable to assume that he kept the silencers at his permanent residence. Certainly, the unregistered silencers were transferrable to others, but they also are of a quality that would make the individual who has them want to keep them for an extended period of time. A silencer is very similar to a gun, which could be disposed of or transferred but is more commonly kept by its owner for an extended time period. The place to be searched was the suspect's residence which was the only reasonable place that law enforcement officers could search for the silencers. While defendant argues that the silencers were viewed at the clubhouse and not at his residence by the witness, there existed a sufficient nexus between defendant's ownership of the silencers and his residence to justify probable

cause to issue a search warrant for his residence. The weight of these factors establishes that the search warrant affidavit was not based upon stale information. In the opinion of the undersigned, probable cause existed to search defendant's residence for the silencers.

Furthermore, if the Court were to find that the information in the warrant was stale or insufficient to establish probable cause, the motion to suppress should be denied pursuant to the good faith doctrine. *United States v. Leon*, 468 U.S. 897 (1984). The decision above supports application of the good faith doctrine in this case.

Defendant also argues that statements he made to law enforcement officers should be suppressed because he was not read *Miranda* rights at the time he was first placed under arrest. In contrast to defendant's assertion that he was not read *Miranda* rights and that he thought he was under arrest when he made statements, the government asserts that defendant was not under arrest and, most importantly, asserts that defendant was given *Miranda* rights not once, but twice during the questioning. It appears that after defendant was first given *Miranda* rights, defendant should have known that he did not have to answer the questions. In fact, after *Miranda* rights were read a second time, defendant asked to speak to a lawyer, which ended further questioning.

Pursuant to the landmark decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), an individual who is in custody and subject to interrogation is entitled to be informed of his *Miranda* rights, which includes the right to counsel. Defendant must be informed of his *Miranda* rights if he is in custody and subject to interrogation. To determine whether or not the defendant is in custody, the Court is required to look at the totality of the circumstances to determine whether or not the defendant's freedom of action has been restrained in a significant way. *See Oregon v. Mathiason*, 429 U.S. 492 (1977). Factors which can be considered include the length of the detention, the

physical surroundings, whether the suspect believed his freedom was significantly restricted, the amounts and kinds of pressure placed upon the defendant by police officers, the location of the questioning, and the physical surroundings. *See United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009).

After defendant was pulled over by the officers, he was handcuffed, placed in a police vehicle, and driven back to his home. Defendant remained in the vehicle outside his home while his residence was searched. Defendant was essentially taken into custody and driven to his home. Under these circumstances, defendant was in custody at the time he was handcuffed and placed inside the police vehicle. At that point, any statements made by defendant to Escanaba Public Safety Officer Gary Sovey without the benefit of a *Miranda* warning should be suppressed. It is my opinion that defendant first received an initial *Miranda* warning by ATF Special Agent Petschke orally and then later received a second *Miranda* warning from Special Agent Petschke. In the opinion of the undersigned, statements defendant made to ATF Special Agent Petschke were made after receiving a *Miranda* warning and should not be suppressed.

Accordingly, it is recommended that defendant's Motion to Suppress Evidence (Docket #29) be denied on his request to suppress the search warrant, denied as to statements he made to ATF Special Agent Petschke, and granted as to any statements made to Escanaba Public Safety Officer Sovey between the time period defendant was placed in handcuffs and put inside the police vehicle until the time when defendant was first verbally given a *Miranda* warning by ATF Special Agent Petschke outside defendant's home.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  December 7, 2011