UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                      Case No. 2:11-cr-7

v.                                     HON. ROBERT HOMES BELL

JAMES RICHARD VANDERWEELE,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

       Defendant's Motion to Suppress Evidence has been remanded for consideration of whether statements made by defendant to ATF Special Agent Petschke were the product of coercion and involuntary despite defendant receiving Miranda warnings. In the Report and Recommendation filed December 7, 2011, the following recommended factual findings were made:

> On September 13, 2010, this court issued a search warrant for defendant's residence. On the day the search warrant was executed, UPSET detectives Erickson and Hanson established surveillance at defendant's residence. The officers needed to know defendant's location before attempting to execute the warrant because defendant was known to carry a handgun and silencer with him. The detectives observed a male driving a moped in an alley behind the Vanderweele residence. The driver of the moped was believed to be James Vanderweele. The detectives followed the moped, approached and asked the driver if his name was Mike. The driver responded that his name was James. Detective Erickson then identified himself as a police officer and advised defendant that they had a search warrant for his home. Defendant stated that he was out to get cigarettes and only his wife and his dog, a large pit bull, were inside the home. A record check revealed that defendant had a restricted license and could not legally drive a moped without violating his restrictions.

Detective Erickson informed defendant that he was not under arrest, but that his presence was required at his home while the officers conducted the search warrant.  Defendant was transported back to his home by Escanaba Public Safety officer Gary Sovey.  Defendant was handcuffed and placed inside the vehicle.   Officers knocked on the front door of the residence where Cheryl Vanderweele and the pit bull were just inside the door.  Entry was made of the residence.  A security sweep was conducted, but no other occupants were located. Cheryl Vanderweele was handcuffed and seated on a couch.  Special Agent Petschke met with defendant at the rear of the residence. Defendant asked what this was all about.  Defendant stated that he would answer questions if he knew what this was about.  Special Agent Petschke advised defendant of his *Miranda* rights. Defendant indicated that he understood his rights.   Special Agent Petschke informed defendant that the search of his residence was to recover his silencers.  Defendant nodded his head.  When asked where they were located, defendant responded that the silencers were in a bag underneath his bed in the bedroom.   Defendant stated that he had four silencers, two for a .22 caliber firearm, one for a 9 mm firearm, and one possibly for a .45 caliber firearm.  Defendant indicated that these came from his deceased brother who lived in Indiana. Defendant was the executor of his brother's estate. Defendant stated that he knew the silencers were most likely illegal in Michigan, knew he should not have them, and knew he could not sell them.  After locating the silencers in the house, Special Agent Petschke returned outside and again read defendant his *Miranda* rights.  At this time, defendant asked to speak to an attorney.  All questioning ended at this point.

Report and Recommendation, Docket #42, at 1-3.

Special Agent Petschke first questioned defendant after defendant was brought back to his residence in a marked police vehicle.  Special Agent Petschke was executing a search warrant of defendant's residence to find defendant's unregistered silencers.  Prior to Special Agent Petschke's questions, defendant stated that he had no idea why he was pulled over on his moped, handcuffed and taken back to his residence.  Defendant was operating his moped without a valid license.  Although the officers testified that defendant could have been arrested for this reason alone, defendant was never placed under arrest.  Defendant claims that he was coerced into making

- 2 -

statements because he was handcuffed and taken back to his residence inside a marked patrol vehicle. Defendant stated that he thought that he was under arrest. Defendant believed that his home would be torn apart and property destroyed if he did not provide the location of the silencers in his residence. Defendant indicated that he felt that he was left with no other choice than to make a statement. Defendant stated that the silencers were under his bed and that he received the silencers from his brother's estate and brought them to Michigan from Indiana. Defendant admitted that he did not think that the silencers were legal, that he knew he could not sell them, and that he had never paid a transfer tax to register the silencers. Special Agent Petschke ended his questioning once defendant stated that he wanted an attorney.

Defendant argues that his statements should be suppressed as the product of Special Agent Petschke's coercion. When a defendant claims that his confession was coerced, the government bears the burden of proving by preponderance of the evidence that defendant's waiver was voluntary. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972); *North Carolina v. Butler*, 441 U.S. 369 (1979). In determining whether or not the waiver was voluntary, the Court is required to look at the totality of the circumstances to determine whether or not the police officers engaged in coercive conduct during the interrogation and whether or not the coercive conduct resulted in the incriminating statements. *See Colorado v. Connelly*, 479 U.S. 157 (1986). Factors which should be considered are the location of the questioning, whether *Miranda* warnings were given, the number of interrogators, the length of questioning, whether or not the defendant was denied food, water or toilet facilities, and whether the police used threats, promises, lies or tricks. *Id*.

The Sixth Circuit has established three factors to determine whether a confession was involuntary: the police activity was objectively coercive; the coercion in question was sufficient to overbear the defendant's will; and the alleged police misconduct was the crucial motivating factor

in the defendant's decision to offer the statement. *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).

In *McCall v. Dutton*, 863 F.2d 454 (6th Cir. 1988), the court concluded that statements that the defendant made to yelling police officers with handguns and shotguns drawn while the defendant was lying on the ground with multiple gun shot wounds, when defendant was under the influence of narcotics, were not the product of coercion. Similarly, statements made to an FBI agent without Miranda warnings, during a 90-minute interview inside the defendant's employer's office after the agent told defendant that his story was not believable and that giving false information would make the matter worse were not the product of coercion. *Unites States v. Mahan*, 190 F.3d 416.

Special Agent Petchke testified that he was in radio contact with Detective Erickson after they had pulled defendant over. Special Agent Petchke told the detective to ask defendant if he wanted to return to his residence while they executed the search warrant of his home. Defendant agreed to return home. Special Agent Petchke then went to the front door of the home and knocked and announced that he had a search warrant. Defendant's wife was home. She answered the door and secured the dog. Defendant's wife was told that there was search warrant for the home, she was handcuffed placed on the couch, and Special Agent Petchke informed her of her Miranda rights. Special Agent Petschke then walked through the house to secure the home to make sure no one else was present.

Special Agent Petschke then went to the backyard of the home to speak to defendant who had arrived in a marked patrol vehicle. Officer Sovey removed defendant from the vehicle. Special Agent Petschke testified that he does not recall if defendant was in handcuffs at that time. Defendant immediately asked what this was all about. Special Agent Petschke indicated that he

- 4 -

wanted to talk and defendant stated that he first wanted to know what this was all about.  Special Agent Petschke from memory gave defendant Miranda warnings and defendant indicated that he understood.  Special Agent Petschke testified that defendant was not under arrest because he did not have a warrant to arrest defendant and he did not have probable cause to arrest him at that time, although he was aware that defendant could have been arrested for driving a moped without a license.  Miranda warnings were given because defendant was transported in handcuffs in a marked patrol vehicle back to the scene of the search warrant.  Special Agent Petschke gave the Miranda warnings because he felt under the circumstances it was prudent.  Special Agent Petschke informed defendant that he had a search warrant to recover defendant's silencers.  Defendant did not make an oral response but nodded his head up and down.

Special Agent Petschke asked where defendant's silencers were located and defendant responded that they were under his bed and that he had four silencers including two for a .22 caliber firearm, one for a 9 mm firearm, and one for a .45 caliber firearm.  Defendant explained that they came from his deceased brother's estate and he also had a .22 handgun with an externally threaded barrel.  Defendant stated that he had sold most of the guns from the estate and that he did not pay the "transfer tax" on the silencers.  Defendant knew the silencers were not registered in Michigan, but felt that they were probably legal in Indiana. Defendant knew he probably should not have had the silencers and knew that he could not legally sell the silencers.  Special Agent Petschke then went inside the residence and found the four silencers, the pistol, and ammunition underneath the bed.  Special Agent Petschke went back outside and read defendant Miranda warnings from an ATF form.  Special Agent Petschke wanted to conduct a more detailed interview and have defendant make a written statement.  Defendant stated that he wanted an attorney and Special Agent Petschke ended his interview.

Defendant testified that he felt he and his wife were under arrest as soon as they were placed in handcuffs. Defendant testified that he was never told that he was under arrest. When he initially asked if he was under arrest, the officers told him that he needed to talk to Special Agent Petschke. Defendant stated that he felt like he did not have a choice but to go back to his residence. He stated that he was initially placed in handcuffs with his hands behind him and then the cuffs were removed and placed so that his hands were in front of him. He did not recall initially receiving a Miranda warning from Special Agent Petschke. Defendant stated that he immediately told Special Agent Petschke that this had to be a mistake and the search warrant had to be bad. He explained that he was given power of attorney to sell his brother's sporting equipment from his brother's estate. He stated it was no secret and he was not trying to hide the fact that he had four silencers. He informed Special Agent Petschke that the transfer tax was not paid. He believes that he sat in the patrol vehicle for close to one hour outside his home and at some point was placed in his garage where he sat on his garden tractor or off-road vehicle. Defendant stated he was told it would be easier if he just cooperated. Consequently, defendant felt that the officers would tear his house apart if he did not disclose the location of the silencers.

Under these circumstances, it is the opinion of the undersigned that there is no evidence of coercive activity by Special Agent Petschke. The tone of the conversation between Special Agent Petschke and defendant was normal and no threats were made. Defendant volunteered information and indicated that it was not a secret that he possessed silencers. It was appropriate that defendant be placed in handcuffs during the execution of the search warrant for officer safety. Defendant was 58 years old at the time of the execution of the search warrant, he had some experience with law enforcement, and exhibits an intelligence level that shows he could have and did have a good understanding of what was going on during the time of the execution of the search

- 6 -

warrant.  In fact, defendant testified that he spotted the unmarked police car tailing him and pulled over voluntarily and his suspicion was immediately confirmed that he was being tailed by a police vehicle as soon as the vehicle pulled alongside him.  He immediately recognized that the occupants were law enforcement officers.  The interrogation was not lengthy and there is no indication that defendant requested and was denied food or water.  There is no indication that defendant was under the influence of drugs or alcohol or that he was tired.  The testimony establishes that defendant understood his right to an attorney and when he requested an attorney all questioning ceased.  There is no evidence that defendant was subjected to threats, promises, lies or tricks.  Certainly, the situation was stressful, but there is a lack of evidence of coercion.  Accordingly, the undersigned recommends that the Court find the government has met its burden of proving that defendant's decision to speak with Special Agent Petschke was voluntary and was not the product of coercion.

Therefore, it is recommended that defendant's motion to suppress statements made to Special Agent Petschke (Docket # 29) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  February 1, 2012

- 7 -